# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAMS ETHRIDGE,         )
)
         Plaintiff,      )
)
vs.                     )      Case No. 08–cv–867–SCW
)
ILLINOIS DEPARTMENT OF )
JUVENILE JUSTICE,      )
)
         Defendant.    )

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I.  Introduction

Before the Court is Defendant's Motion for Summary Judgment (Docs. 59 & 60). Plaintiff opposes the motion (Doc. 62). Based on the pleadings, the applicable law, and the following, the Court **GRANTS** Defendant's motion (Docs. 59 & 60).

On December 11, 2008, Plaintiff filed a three count claim against the Illinois Department of Corrections ("IDOC") (Doc. 2). Plaintiff subsequently dismissed Count III alleging state law retaliatory discharge (Docs. 10 & 11). On November 20, 2009, Defendant IDOC filed a motion for summary judgment alleging that the Illinois Department of Juvenile Justice ("IDJJ") not IDOC was the proper defendant (Doc. 14 & 15). In response to that motion, Plaintiff sought leave to file his Amended Complaint properly alleged IDJJ as a Defendant which Judge Reagan granted on January 6, 2010 (Docs. 17 & 20).

Subsequently on January 15, 2010, Plaintiff filed an Amended Complaint against IDJJ for discrimination based on his disability in violation of 42 U.S.C. § 12101, et seq., the Americans with Disabilities Act of 1990 (hereinafter "ADA") (Count I) and age discrimination in violation of 29 U.S.C.

§ 621, et seq., the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA") (Count II) (Doc. 25). Plaintiff alleges that he was forced to resign his employment with Defendant and effectively retire because of Defendant's failure to accommodate his disability and that such failure to accommodate was because of his age and disability (Doc. 25 ¶¶ 16 & 30). Specifically, Plaintiff alleges that he was a qualified individual with a disabiltiy and was able to perform all of the essential functions of his position with Defendant with reasonable accommodations but that Defendant refused to allow Plaintiff to work between August 24, 2007 and October 1, 2008, and then refused to allow him reasonable accommodations between October 1 and October 29, 2008 in order to pressure Plaintiff into resigning his employment (*Id.* at ¶¶ 22-23). Further, Plaintiff alleges that due to his age, Defendant refused to allow Plaintiff to return to work, pressured him to resign or terminate his employment, and refused Plaintiff reasonable accommodations (*Id.* at ¶ 30).

On April 21, 2011, Defendant filed the current pending Motion for Summary Judgment (Docs. 59 & 60). Plaintiff filed his response on June 11, 2011 (Doc. 62) as well as an Affidavit to supplement his Response on June 14, 2011 (Doc. 65).

## II.  Factual Background

This matter stems from events that occurred at the Illinois Youth Center in Murphysboro, Illinois during 2007 and 2008. The Illinois Youth Center is a boot camp for youths who have committed crimes (Doc. 59 Ex. 9 at pp. 37-38). In the Center, juveniles are housed in dormitories which hold bunk beds and are housed 24 or 30 to a room (*Id.* at p. 39, Doc. 59 Ex. 11 at pp. 48-49). The juveniles are not restrained while in the housing units (*Id.*). The Illinois Youth Center has been under the administration of the Illinois Department of Juvenile Justice ("IDJJ") since the department's creation on June 1, 2006, at which time all juvenile correction centers in the state were transferred from the authority of the Illinois Department of Corrections ("IDOC"). *See* **730 ILCS 5/3-2.5-15(a),**

**20(a)(2)**. At the time of the transfer all personnel once employed for IDOC in juvenile correction centers were transferred to the employment of the IDJJ. **730 ILSC 5/3-2.5-15(a), 40(a)**.

Plaintiff began working at the Illinois Youth Center in Murphysboro in 1998 as a Youth Supervisor (Doc. 59 Ex. 9 at p. 10). While working at the Center, Plaintiff injured his back on two separate occasions, on May 3, 2004 and on December 14, 2004, while responding to fights between inmates (*Id.* at pp. 11-13, 15). As a result of his injuries, Plaintiff went on disability on December 2005 as his injuries required back surgery. On August 24, 2007, Christopher D. Heffner, Plaintiff's surgeon determined that Plaintiff had reached his maximum medical improvement and imposed permanent physical restrictions on Plaintiff. The restrictions prevented Plaintiff from walking or standing for more than 20 minutes at a time, or 60 minutes in a day, and prevented him from lifting or carrying over 30 pounds (*Id.* at pp. 73-74; Doc. 59 Ex. 1). On September 13, 2007, Heffner completed a form entitled "Authorization for Disability Leave and Return to Work" (Doc. 59 Ex. 1). On the form, Heffner indicated that Plaintiff was "totally disabled" and that he could never return to his current occupation; Heffner also imposed the above-stated restrictions (*Id.*; Doc. 59 Ex. 9 at pp. 77-82). He also noted that Plaintiff was both temporary and totally disabled from his regular occupation and that he would "never" be able to return to his regular job due to the restriction (Doc. 59 Ex. 1).

Subsequently, on November 8, 2007, Plaintiff obtained an "Authorization for Disability Leave and Return to Work" form from Karen Chamness, a physician's assistant with Plaintiff's family doctor. This form stated that he could return to work but that his activities were restricted to standing or walking on concrete for no more than 20 minutes and lifting no more than 30 pounds (Doc. 59 Ex. 2). Chamness further indicated that Plaintiff had "no limitation of functional capacity" and was "capable of heavy work" with "[n]o restrictions" (*Id.*). Sometime in late November 2007, Plaintiff spoke with Pam Wilkey, Human Resources Rep. for Defendant, who informed Plaintiff that he could not

return to work (Doc. 59 Ex. 10 at p. 48; Ex. 9 at pp. 60-64, 95). Defendant insists that Plaintiff was not allowed to return to work in 2007 because the form submitted by Chamness was inconsistent and there was no indication that the limitations would not exceed 90 days (Doc. 59 Ex. 3 at ¶8). Plaintiff states that Pam Wilkey informed him he could not return to work because the IDJJ was afraid that he would reinjure himself (Doc. 59 Ex. 9 at pp. 60-64). Defendant also expressed concern that the limitations on Plaintiff's physicians would raise safety concerns as employees might have to stand on concrete more than 20 minutes in the event of a fire or in breaking up a fight between inmates and that Plaintiff's inability to lift more than 30 pounds would interfere with his ability to restrain inmates if a fight so required (Doc. 59 Ex. 11 at pp. 55-57). Plaintiff maintains that he could have exceeded the prescribed limits if need be and that subduing inmates did not require heavy lifting.

After Plaintiff was prohibited from returning to work, Plaintiff filed a charge with the EEOC on December 3, 2007 (Doc. 59 Ex. 9 at p. 101; Doc. 59 Ex. 7). The Charge alleged that Plaintiff suffered a continuing action of discrimination based on age and disability between May 9, 2007 and December 3, 2007 and stated that Marcia, an agency official responsible for disability compensation would not return he phone calls after he was released by both doctors and his employer had been informed he could return to work with reasonable accommodations (Doc. 59 Ex. 7; Doc. 25 Ex. A). Plaintiff's Charge also stated that his Workmen's Compensation Lawyer had spoken with Marcia and that she told him Plaintiff would not be working for the state and that he should resign or retire (*Id.*). Plaintiff's Charge indicated that he had been forced to retire because of his age and that he was denied a reasonable accommodation in violation of the Americans with Disabilities Act (*Id.*). The EEOC charge does not mention Frank Wilkie. The EEOC issued Plaintiff a Right to Sue letter on September 15, 2008 (Doc. 25 Ex. A).

Also in September of 2007, Plaintiff received a release from Heffner stating that he

could return to full duty on a trial basis (Doc. 59 Ex. 13). On the form Heffner placed no restrictions and stated he was capable of heavy work, albeit on a trial basis (*Id.*). Plaintiff returned to work on third shift on October 1, 2008 (Doc. 59 Ex. 9 at p. 109). After returning to work, Plaintiff requested an accommodation from his supervisor Frank Wilkie (Doc. 59 Ex. 11 at pp. 22-23). Specifically, Plaintiff asked that he be able to sit in a cushioned chair for part of his shift or that he be allowed to work in the control room for his entire shift. Wilkie refused Plaintiff's first request because he stated the chair could be used by the inmates as a weapon (*Id.* at pp. 22-24). Although Wilkie did not recall Plaintiff's request to work in the control room, Wilkie would not have allowed an employee to work for an entire shift in the control room as employees rotate positions in order to stay alert during their shift (Doc. 59 at pp. 59-61). After his accommodations were denied, Plaintiff obtained a form from his family doctor, Mark Preuss, stating that he could not work due to his back pain (Doc. 59 Ex. 5; Ex. 9 at pp. 120-21). Plaintiff later submitted his resignation which stated his resignation was effective October 31, 2008 (Doc. 59 Ex. 9 at p. 146; Doc. 59 Ex. 6).

### III. Summary Judgment Standard

Summary Judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED.R.CIV.P. 56(c)**. A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, **25 F.3d 530, 534 (7th Cir. 1994)**. The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. **FED.R.CIV.P. 56(e);** *Celotex Corp v. Catrett*, **477 U.S. 317, 325 (1986)**. In considering

motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986)**.

## IV. <u>Analysis</u>

### A. Statute of Limitations

Defendant first claims that Plaintiff's Complaint against Defendant IDJJ is time barred because it was filed well outside of the 90 days from the date he received his Right to Sue letter from the EEOC. Specifically, Defendant IDJJ argues that Plaintiff improperly named IDOC as the original defendant in this case and because the naming of IDOC was not a mistake on Plaintiff's part, but rather a lack of knowledge as to the proper party, Plaintiff cannot relate his claim against IDJJ in his Amended Complaint back to his original timely filed Complaint.

As Plaintiff first filed an EEOC charge regarding his claims and received a Right to Sue letter, he then had 90 days from the receipt of the letter in which to commence a lawsuit arising out of the allegations set forth in his EEOC charge. *See* **42 U.S.C. § 2000e-5(f)(1)**. Plaintiff filed his original Complaint against IDOC on December 10, 2008, within the time limits provided in the Right to Sue letter. However, Plaintiff did not file his Amended Complaint naming IDJJ until January 14, 2010, almost two years after the deadline for filing a Complaint based on his EEOC charge. Therefore, Plaintiff's Amended Complaint would be barred by the statute of limitations unless it relates back under **FEDERAL RULE OF CIVIL PROCEDURE 15(c)**.

**FEDERAL RULE OF CIVIL PROCEDURE 15(c)** allows a plaintiff to amend his pleading and relate back to the date of the original pleading when:

(c)     the amendment changes the party or the naming of the party against whom a

claim is asserted...if...the party to be brought in by amendment:

(i)     received such notice of the action that it will not be prejudiced in

defending on the merits; and

(ii)     knew or should have known that the action would have been brought

against it, but for a mistake concerning the proper party's identity.

**FED.R.CIV.P. 15(c)(i)-(ii)**.

This section allows a party to amend his complaint and "relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake." *Worthington v. Wilson*, **8 F.3d 1253, 1256 (7th Cir. 1993) (construing the mistake requirement in Rule 15(c)(quoting** *Wood v. Worachek*, **618 F.2d 1225, 1229-30 (7th Cir. 1980)));** *Baskin v. City of Des Plaines*, **138 F.3d 701, 704 (7th Cir. 1998);** *King v. One Unknown Federal Correctional Officer*, **201 F.3d 910, 914 (7th Cir. 2000) ("we have interpreted [Rule 15(c)] to permit an amendment to relate back to the original complaint only where 'there has been an error made concerning the identity of the proper party and that party is chargeable with knowledge of the mistake'" (citation omitted))**.  While previous case law focused on the mistake element of the analysis, a recent Supreme Court opinion has changed the primarily focus of the analysis when deciding whether a claim relates back to the original Complaint. *See Krupski v. Costa Crociere S.P.A,* **–U.S.–, 130 S.Ct. 2485 (2010)**.  As the Seventh Circuit recently stated *Krupski* "changed what we and other courts had understood, ...to be the proper standard for deciding whether an amended complaint relates back to the date of the filing of the original complaint." *Joseph v. Elan Motorsports Technologies Racing Corp.*, **638 F.3d 555, 559 (7th Cir. 2011) (citing** *Krupski*, **130 S.Ct. 2485)**.  The focus is not on what the plaintiff knew or should have known, but rather on "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and...whether, even if so, the delay in the plaintiff's discovering his mistake

impaired the new defendant's ability to defend himself." *Id*. **at 559-60.** "A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose-unless it is or should be apparent to that person that he is the beneficiary of a mere slip or pen, as it were." *Id*. **at 560 (citations omitted).** Stated another way, under *Krupski*, the Court conducts a two-pronged analysis: whether Defendant knew or should have known that Plaintiff meant to sue it at the time of the original complaint and whether Plaintiff's delay in naming Defendant impaired his ability to defend himself.

    Here, both prongs of the analysis are satisfied. As to the first prong, the Court focuses on whether IDJJ should have known that Plaintiff, had it not been for his mistake, would have sued it instead of IDOC. Defendant's own summary judgment motion makes clear that they knew, or should have known, that they would have been sued but for Plaintiff's mistake concerning whether IDJJ was a part of IDOC. Defendant admits that the Right to Sue letter issued to Plaintiff was copied to the IDJJ, so it knew that a suit might be initiated by Plaintiff and that they were the proper Defendant. Also at the time that Plaintiff received his right to sue letter, power over personnel had already been transferred to the IDJJ so it reasonable to draw the conclusion that they knew they were the property department to deal with Plaintiff's complaints. As to the second prong, as Plaintiff points out, Defendant was originally represented by Assistant Attorney General, Amy Gerloff, who also represented some of Defendant's employees who were deposed earlier in the case. Consequently, Defendant's counsel was familiar with the claims and participated in some discovery before entering an appearance for Defendant. There is nothing further in the record, nor has Defendant alleged that it was impaired in its ability to defend itself by not being included in the original complaint. Accordingly, the Court finds that Plaintiff has met the requirements of Rule 15(c) and thus the claims are not barred by the statute of limitations.

**B.      EEOC Charge**

Defendant also argues that Plaintiff has failed to exhaust his claims through the EEOC. Specifically, the Defendant argues that Plaintiff failed to raise his claims regarding Defendant's failure to accommodate his disability in 2008 in his EEOC charge and thus that claim should be dismissed for failure to exhaust.

A plaintiff is not allowed to bring a claim that was not included in his EEOC charge. *Cable v. Ivy Tech State College*, **200 F.3d 467, 476 (7th Cir. 1999)**. The requirement ensures that the EEOC is able to conduct a full investigation; it also provides the employer with notice of the claims as well as gives the employer an opportunity to resolve the matter. *Id*. **at 476-77 (citing** *Harper v. Godfrey Co.*, **45 F.3d 142, 148 (7th Cir. 1995));** *Babrocky v. Jewel Food Co.*, **773 F.2d 857, 863 (7th Cir. 1985).** A claim must fall within the scope of the EEOC complaint and does so "if it is 'like or reasonably related to' the charges in the EEOC complaint and if it 'reasonably could have developed from the EEOC's investigation of the charge before it.'" *Id*. **at 477**; *see also Connor v. Illinois Dept. of Natural Resources*, **413 F.3d 675, 680 (7th Cir. 2005) ("claims brought in judicial proceedings must be within the scope of the charges filed with the EEOC; '[a]n aggrieved employee may not complaint to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination" (quoting** *Rush v. McDonald's Corp.*, **966 F.2d 1104, 1110 (7th Cir. 1992)).** The lawsuit must allege the same conduct and the same individuals as the EEOC complaint. *Cheek v. Peabody Coal Co.*, **97 F.3d 200, 202-03 (7th Cir. 1996).** However, the standard is a liberal one and a plaintiff is not required to allege every underlying fact as to each claim. *Jackson v. Local 705, International Brotherhood of Teamsters, AFL-CIU*, **No. 95-c-7510, 2002 WL 460841, at \*2 (N.D. Ill. March 26, 2002) (citing** *Cheek v. W. &S. Life Ins. Co.*, **31 F.3d 497, 500 (7th Cir. 1994)).**

Defendant argues that Plaintiff's Count II regarding Defendant's alleged failure to accommodate his disability in 2008 should be dismissed because he failed to exhaust that claim. Specifically, Defendant argues that Plaintiff's EEOC charge did not include allegations involving the 2008 event as the charge does not mention the failure to accommodate his disability by refusing to let him work in control room or provide a chair for him to sit on nor does it mention Frank Wilkie who made the decision not to accommodate Plaintiff in the requested ways.

Plaintiff, on the other hand, argues that he need not file another EEOC charge when the events at issue occur after he has received his right to sue letter. While Plaintiff argues that Courts have readily recognized this distinction and have allowed suits to include allegations that arose after a plaintiff received his Right to Sue letter, this is not the case in the Seventh Circuit. The Seventh Circuit has routinely held that events which occur after an EEOC charge has been filed but before a complaint is filed in state court are outside the scope of the EEOC charge. *See Conner v. Illinois Department of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005); *Teal v. Potter*, 559 F.3d 687, 692-93 (7th Cir. 2009).[1] For instance, in *Connor*, the Seventh Circuit found that a plaintiff's complaint alleging discrimination arising out of a December 2002 non-promotion was outside of the scope of her EEOC charge because she filed the charge on November 1, 2002 alleging a previously passed over promotion in 2001 and other allegations of discrimination which occurred in December 2001 through January 2002

---

[1] Plaintiff's argument, that there is an exception to rule which bars a plaintiff from litigating those claims which were not included in the EEOC when the allegations arise out of actions that occurred after a plaintiff receives his Right to Sue letter and are similar in nature to those actions listed in the EEOC charge as ongoing or continuos, is recognized by Eighth Circuit case law. *See Ammons v. Metropolitan Water Reclamation District of Greater Chicago*, 08 C 5663, 2011 WL 1059993, at * 4 (N.D. Ill. March 18, 2011) (citing *Wedow v. City of Kan. City, Mo.*, 442 F.3d 661, 674 (8th Cir. 2006)). However, as stated by the district court in *Ammons*, district courts are reluctant to follow the law of other Circuits when the Seventh Circuit offers controlling authority and Plaintiff here has failed to offer any controlling case law overruling and drawing a distinction to the Seventh Circuit's decisions in *Conner* and *Teal*.

and received her right to sue letter on November 6, 2002, prior to the December non-promotion. *Conner*, **413 F.3d at 678, 680.** The Court found plaintiff could not have described the events surrounding the non-promotion in her charged nor could the EEOC have conducted a preliminary investigation into her December 2002 non-promotion because it occurred after she received her right to sue letter, and thus the incident was outside the scope of her EEOC charge. *Id*. **at 680.** Similarly, in *Teal*, the Seventh Circuit found that the plaintiff's July 2003 dismissal was outside of the January 2003 EEOC complaint because it did not provide notice of the later dismissal. *Teal*, **559 F.3d at 693.** The Seventh Circuit went further with their instructions to the plaintiff in that case, stating that plaintiff should have initiated an additional charge through the EEOC after her termination in order to properly exhaust her claim. *Id*.

As in *Conner* and *Teal,* Plaintiff here filed his charge with the EEOC well before the 2008 events occurred. Plaintiff filed his EEOC charge on December 3, 2007 alleging that he suffered discrimination based on his age and disability from May 9, 2007 to December 3, 2007 and that even though his doctor had released him to return to work an agency official by the name of Marcia would not return his calls and stated that he could not return to work and should resign (Doc. 25 Ex. A). However, the charge failed to include any information about the October and November 2008 failure to accommodate because the events occurred after Plaintiff had filed his EEOC charge. In fact, the events occurred well after the EEOC concluded its investigation and issued Plaintiff a Right to Sue letter on September 15, 2008. As the events in October and November 2008 did not occur until well after the EEOC's investigation concluded, there was no way that the EEOC could have investigated those events or even had notice of those events. *See Conner*, **413 F.3d 680**.

Further, the fact that Plaintiff marked "continuing action" on his EEOC charge does not change the outcome. *See Teal*, **559 F.3d at 692-93.** Plaintiff failed to include any facts in his

EEOC charge that would have lead the EEOC to discover Frank Wilkie's failure to accommodate Plaintiff in October and November of 2008. Unlike in *Teal*, where at least the same individual was named but the charge failed to explain how the named individual discriminated against the plaintiff or even what actions or events were at issue, Plaintiff here failed to include any facts that would have provided the EEOC with at least some information that would have lead them to investigate the events at issue. In this case, Plaintiff failed to name Frank Wilkie or describe Wilkie's failure to accommodate Plaintiff by providing him with a chair or allowing him to work in the control room. Further, there are no allegations of any wrongful conduct by any individuals after December 2007. As stated in *Teal*, the scope of the EEOC's investigation was defined by Plaintiff's charge and it would be unreasonable for Plaintiff to believe that the EEOC would discover the acts of discrimination from October and November 2008 by Frank Wilkie when there was not even a mention of Wilkie or any acts of discrimination by him. "To conclude otherwise would allow the entire purpose of the exhaustion requirement to be thwarted." *Teal*, **559 F.3d at 693.**

While Plaintiff argues that Defendants are mistaken in their reliance on *Miller v. American Airlines, Inc.*, **525 F.3d 520, 525 (7th Cir. 2008)** and argues that the case misstated the Seventh Circuit's holding in *Cheek v. Peabody Coal Co.*, **97 F.3d 200, 202-03 (7th Cir. 1996)**, it is Plaintiff that is mistaken. Despite Plaintiff's argument to the contrary, a complaint filed in district court and an EEOC charge must, at minimum, include "the same circumstances *and* participants." *See Connor*, **413 F.3d at 680(emphasis added);** *see also Miller*, **525 F.3d at 525;** *Cheek*, **97 F.3d at 202-03**. While Plaintiff states that such a holding is a misstatement of prior Seventh Circuit precedent, the Seventh Circuit has routinely held that the EEOC charge must include both the same circumstances and the same participants as the later filed complaint. *Id.*; *see also Conner*, **413 F.3d at 680** The Seventh Circuit has consistently held that a plaintiff may not complain of only certain instances to the

EEOC and then seek relief in the courts for different instances of discrimination. *Teal*, **559 F.3d at 691 (citing** *Rush v. McDonald's Corp.*, **966 F.2d 1004, 1110 (7th Cir. 1992)).**

Accordingly, as Plaintiff's EEOC charge fails to put either the EEOC or Defendant on notice of the allegations of failure to accommodate in October and November 2008 when Plaintiff returned to work, those events are outside the scope of the charge. As the Seventh Circuit informed the plaintiff in *Teal*, Plaintiff here should have filed an additional EEOC complaint after he was denied accommodations upon his return to work in Fall of 2008 so that the EEOC could investigate the allegations and attempt to resolve the matter. *Teal*, **559 F.3d at 693**. As Plaintiff has failed to exhaust his claims of failure to accommodate in 2008 with the EEOC, he can not now bring them before this Court. Thus, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's claims of failure to accommodate in October and November 2008 by Frank Wilkie and thus those claims are **DISMISSED without prejudice** for failure to exhaust.

## C. Plaintiff's 2007 Claims of Failure to Accommodate

As Plaintiff's claims of violation of the ADA and ADEA for Defendant's alleged failure to accommodate his disability in October and November 2008 have been dismissed for failure to exhaust, the only claim left before the Court is Plaintiff's claims of violation of the ADA and ADEA for Defendant's refusal to allow Plaintiff to return to work in 2007. Defendant argues that Plaintiff's claim fails under both the ADA and ADEA.

### 1. ADA Claims

Plaintiff's Complaint alleges that Defendant violated the Americans with Disabilities Act when it failed to accommodate his disability and allow him to return to work in 2007.

"The ADA protects 'qualified individuals with a disability' from discrimination in their employment, the hiring process, or promotions. *Rooney v. Koch Air, LLC*, **410 F.3d 376, 380 (7th**

**Cir. 2005) (citing 42 U.S.C. § 12112(a))**[2] . The statute defines a "qualified individual with a disability"

as "an individual with a disability who, with or without reasonable accommodation, can perform the

essential functions of the employment position that such individual holds or desires." **42 U.S.C. §**

**12111(8).** To establish a violation of the ADA, an employee must show: "1) that [he] is disabled; 2) that

[he] is otherwise qualified to perform the essential functions of the job with or without reasonable

accommodation; and 3) that the employer took an adverse job action against [him] because of [his]

disability or failed to make a reasonable accommodation." *Winsley v. Cook County*, **563 F.3d 598,**

**603 (7th Cir. 2009)**. If a plaintiff meets his prima facie case, the burden then shifts to the defendant

to "offer a legitimate nondiscriminatory reason for the employment decision." *Nese v. Julian Nordic*

*Const. Co.*, **405 F.3d 638, 641 (7th Cir. 2005) (citing** *DeLuca v. Winer Indus., Inc.*, **53 F.3d 793,**

**797 (7th Cir. 1995) (applying indirect method to ADA claims))**. If defendant offers such an

---

[2]Significant changes to the ADA took effect on January 1, 2009, after the events at issue
occurred. *See* **ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008)**. As
Congress did not express its intent for these changes to apply retroactively, the courts look to the
law in place prior to the amendments. *Fredericksen v. United States Parcel Serv., Co.*, **581 F.3d
516, 521 n. 1 (7th Cir. 2009)**. Similarly, changes to the 29 C.F.R. §§ 1630.1 and 1630.2 went into
effect on May 24, 2011. *See* **Regulations to Implement the Equal Employment Provisions of
the Americans with Disabilities Act, as Amended, 76 Fed. Reg. 16978-01 (March 25, 2011) (to
be codified at 29 C.F.R. § 1630)**. Nothing in those regulations clearly states that they are to have
retroactive effect; in fact, the revisions were necessitated by the Amendments Act. *See id*. **(Noting
the Amendments Act "changes the way...statutory terms should be interpreted in several
ways, therefore necessitating the revision of the prior regulations and interpretive
guidance.")**. Because a desire for retroactivity is not clearly expressed in the regulation, the next
consideration is whether application of the regulation would have a retroactive effect, meaning it
would impair vested rights or attach new consequences to completed transactions. *See Landgraf v.
USI Film Products*, **511 U.S. 244, 280 (1994);** *see also Labojewski v. Gonzales*, **407 F.3d 814,
819 (7th Cir. 2005)**. In this case, application of the regulations in question would have a retroactive
effect, because they change the definition of, inter alia, "substantially limits" in a way designed not to
require the level of limitation and the intensity of focus applied by the Supreme Court in *Toyota
Motor Mfg., Ky, Inc. v. Williams*, **534 U.S. 184 (2002)**. *See* **76 Fed. Reg. 16978-01.**
Accordingly, the regulations will not be retroactively applied, and all citations to the regulations refer
to the pre-2011 Code of Federal Regulations edition.

explanation, the burden then shifts back to the plaintiff to show that there is an issue of material fact as to whether defendant's reason was pretextual. *Id*.

An individual can prove that he is disabled for ADA purposes in one of three ways: (1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such an impairment; or (3) he is regarded as having such an impairment by his employer. **42 U.S.C. § 12102(1)**. "A person is 'regarded as disabled' when the employer, rightly or wrongly, believes that [he] has an impairment that substantially limits one or more major life activities." *Rooney*, **410 F.3d at 382.** There is no violation under this prong when the condition is not substantially limiting and the employer does not believe it to be so. *Id*.

The parties dispute whether Plaintiff qualifies as a disabled individual under the ADA. Defendant debates whether Plaintiff can meet his burden of proof under the first two methods, that he had an impairment that substantially limited a major life activity or that he has a record of such impairment. Plaintiff, instead of trying to prove either of the first two methods, argues that he should be considered disabled because he can prove that Defendant "regarded" him as disabled. Plaintiff points to evidence that he had to go on disability leave from December 2005 until October 1, 2008 because of the injury to his back and his physician stated in the form sent to Defendant that he was "totally disabled" from his "regular occupation." Plaintiff also points to the fact that Defendant declined to offer him light duty in 2007 because they believed that his disability was not temporary and would last longer than 90 days and that Pam Wilkey instructed Plaintiff that he could not return to work because Defendant was afraid he would reinjure himself. Here, Plaintiff has presented enough evidence, when looked at in the light most favorable to him, to show that his employer "regarded" his disability as substantially impairing in a major life activity.

Defendant also argues that Plaintiff can not meet the second prong of his prima facie

case under the ADA.  The second prong requires that plaintiff be a qualified individual with a disability meaning "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Bombard v. Fort Wayne Newspapers, Inc.*, **92 F.3d 560, 563 (7th Cir. 1996); see also 42 U.S.C. § 2111(8)**. Plaintiff bears the burden of demonstrating that he is a qualified individual.  *Id.*   Here, Defendant points to the fact that Plaintiff's physician, Dr. Heffner, stated that he was permanently disabled, was unable to return to work, and was limited in his daily activities to not walking or standing for more than 20 minutes at a time, 60 minutes total a day, and unable to lift more than thirty pounds.  Defendant also points to testimony from Frank Wilkie, Plaintiff's supervisor, who stated that it would be unsafe for an employee who could not lift more than thirty pounds because employees are sometimes required to break up fights between inmates, some who could be rather large given their age, which could cause employees to have to lift.  Wilkie also stated that he could envision scenarios where an employee would have to stand on concrete longer than 20 minutes at a time on a shift, including in the event of a fire or escape attempt (Doc. 59 Ex. 11 at pp. 52-56).

Further, Plaintiff has failed to present evidence to meet his burden that he could perform the essential functions of the employment position, with or without accommodation.  While Plaintiff has presented some evidence to refute Wilkie's testimony that he would have to stand on concrete for longer than 20 minutes,[3] Plaintiff is unable to demonstrate that he could perform essential lifting at the

---

[3]  Plaintiff does point to some evidence as to whether he could stand on concrete for longer than 20 minutes.  Plaintiff stated in his deposition that while his medical restriction limited him to 20 minutes standing on concrete at a time, it did not take into account that he exceed those restrictions in extraordinarily rare circumstances and could take medication to counteract the effects of the pain (Doc. 59 Ex. 9 at pp. 56-57).  Plaintiff also stated that in an escape scenario envisioned by Wilkie, many guards would be at check points outside which would not be on concrete or would be assigned to lockdown the facility in which case Plaintiff would be able to sit down on occasion (*Id.*).  Further, Plaintiff stated that he could perform his duties with an accommodation if he was provided a cushioned chair to sit on during some of his shift and pointed to the affidavit of another employee

Youth Center. Plaintiff's supervisor, Frank Wilkie testified in his deposition, that the inability to lift more than thirty pounds would limit an employees ability to break up fights between inmates, an essential function of employees at the Youth Center. Plaintiff points to two facts in order to support his argument that he could perform his essential functions of his position with or without accommodation. Plaintiff first states that he would not be limited by his lifting restrictions because by the time he actually returned to work in October 2008 he could occasionally lift 100 pounds (Doc. 59 Ex. 9 at pp. 34-37). Plaintiff stated that during his work hardening he could lift 100 pounds and that Dr. Heffner told him that although he could aggravate his injury he could not reinjure himself and that he understood that he could only aggravate the injury if he was lifting heavy objects repetitively (*Id.* at pp. 34-35). However, he has failed to point to any evidence to support his contention that he could lift over thirty pounds prior to his return to work in 2008. As his claims regarding his return to work in 2008 have been dismissed, whether he could lift over 30 pounds in 2008 has no bearing on the issue of whether he could perform the essential functions when he was refused his request to return to work in 2007. Further, he acknowledges in his deposition that prior to returning to work, Dr. Heffner limited his lifting and carrying weight to 30 pounds (*Id.* at pp. 35-36). Plaintiff has, thus, failed to present any evidence that he could lift more than 30 pounds at the time that he tried to return to work in 2007.

Plaintiff also states that he could perform his essential functions with or without accommodation because he did not use lifting techniques in order to take down inmates if a fight broke out, as the methods he used did not require lifting. However, Plaintiff's testimony at his deposition was that he has never had to lift an inmate but that he had taken several to the floor and has been able to just fall on them due to his weighing more than the inmates (Doc. 59 Ex. 9 at p. 59). He also stated that while most of the inmates weigh under 150 pounds, he has not come across any yet that knew how to

---

in his same position who was often allowed to use a cushioned chair on third shift (Doc. 65).

use their weight as leverage (*Id.* at pp. 59-60). As Defendant states in its brief in support of summary judgment, although Plaintiff has never come across any inmates that required lifting, that does not mean that there might be future inmate take downs that would require lifting up to 150 pounds. Plaintiff has offered no evidence that he could lift an inmate should the situation so require due to his restrictions. In fact, Plaintiff originally injured his back in the process of subduing an inmate and "taking him across the hall" (*Id.* at pp. 11-12). Plaintiff has, therefore, failed to point to any evidence that would create a triable issue of fact as to whether he could perform the essential function of lifting with or without accommodation. Thus, he has not shown any evidence to meet his burden of proving his prima facie case as to whether he was a qualified individual with a disability. Accordingly, Plaintiff's ADA claim fails.

Even if Plaintiff could meet his prima facie case of showing that he is a qualified individual with a disability and that Defendant took an adverse job action by refusing to allow him to return to work, Plaintiff's claim under the ADA would still fail as Defendant has identified a nondiscriminatory reason for their employment action while Plaintiff has failed to create a material issue of fact showing that the reason was pretextual. Defendant states that it had a nondiscriminatory reason for denying Plaintiff's request to return to work in 2007. Defendant points to the conflicting medical reports and forms that Plaintiff offered to the Defendant from two different physicians which suggested that Plaintiff's limitations would last more than 90 days, the time allowed for light duty. First, Plaintiff offered up a note from Dr. Heffner which stated that Plaintiff was permanently disabled and that he would "never" be able to work at his regular occupation. The form also placed on Plaintiff walking, standing, and lifting restrictions and stated that he was capable of light work (Doc. 59 Ex. 1). Plaintiff later offered a similar form from Karen Chamness stating that he could return to his regular occupation and that he was capable of heavy work with no restrictions (Doc. 59 Ex. 2). However, Dr. Chamness

also noted that Plaintiff was limited to the same walking, standing, and lifting restrictions which had prevented Plaintiff, in Dr. Heffner's opinion, from returning to his normal occupation. Thus, not only did the two doctors' notes conflict with each other, but Dr. Chamness' note itself contradicted itself by stating that Plaintiff was capable of heavy work with no restrictions but also prescribing the same restrictions as Heffner's note. Here, Defendant has set forth a nondiscriminatory reason for its refusal to allow Plaintiff to return to work in 2007 due to conflicting medical reports on his ability to return to his regular occupation.

Since Defendant has set forth a nondiscriminatory reason for their refusal to return Plaintiff to work, the burden shifts back to Plaintiff to create a triable issue of material fact that Defendant's reason was pretextual. Plaintiff, however, has failed to offer up any evidence suggesting that Defendant's reason was pretextual. In order to show pretext, besides a direct admission from the defendant, a plaintiff may present evidence "'tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'" *Nawrot v. CPC Intern*., **277 F3d. 896, 906 (7th Cir. 2002) (quoting** *Testerman v. EDS Technical Prods. Corp.*, **98 F.3d 297, 303 (7th Cir. 1996)).** The Seventh Circuit has previously stated that while it does not sit as a "super-personnel department" in charge of re-evaluating a business' decisions, it would not throw out common sense and reason but instead look at the honesty of the employer's explanations. *See Nawrot*, **277 F.3d at 906 (citing** *Jordan v. Summers*, **205 F.3d 337, 343 (7th Cir. 2000);** *O'Connor v. DePaul University*, **123 F.3d 665, 671 (7th Cir. 1997);** *Stewart v. Henderson*, **207 F.3d 374, 378 (7th Cir. 2000);** *Gordon v. United Airlines, Inc.*, **246 F.3d 878, 889 (7th Cir. 2001)).**

Here, Plaintiff has failed to demonstrate pretext in Defendant's proffered legitimate, nondiscriminatory reason for refusing the allow Plaintiff to return to work in 2007. Defendant states

that it did not allow Plaintiff to return to work due to the inconsistent medical reports from Plaintiff's two doctors which suggested that his limitations would last longer than light duty allowed. While Plaintiff put forth some evidence to show that he could perform some of the essential functions of his job, he has not put forth any evidence showing the Defendant's stated reasoning was pretextual. He has not tried to discount their reasoning or show that their reasoning was baseless or motivated by other factors. Plaintiff simply does not address the pretextual issues. Thus, his claims under the ADA must fail. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment on the ADA claims.

### 2. ADEA Claims

Defendant also argues in its summary judgment motion that Plaintiff's ADEA claim must fail. Specifically, Defendant argues that Plaintiff has failed to demonstrate that the decision to not allow Plaintiff to return to work in 2007 was due to his age.

The ADEA "prohibits employers from firing workers who are 40 or older on the basis of their age." *Martino v. MCI Communications Servs., Inc.*, **574 F.3d 447, 452 (7th Cir. 2009).** Specifically, it "provides, in relevant part, that '[i]t shall be unlawful for an employer...to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Gross v. FBL Fin. Servs., Inc.*, **–U.S. –, –, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009) (quoting 29 U.S.C. § 623(a)(1), with emphasis provided).** "A plaintiff suing under the ADEA may show discrimination directly or indirectly, in the latter instance through the approach established in *McDonnell Douglas Corp. v. Green*, **411 U.S. 792, 93 S.Cr. 1817, 36 L.Ed.2d 668 (1973)."** *Martino*, **574 F.3d at 452.** "In either case, the bottom-line question is whether the plaintiff has proved intentional discrimination." *Id*.

Ultimately, an ADEA plaintiff "must prove by a preponderance of the evidence (which

may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross,* **129 S.Ct. at 2351.** "In other words, proof that the plaintiff's age was a motivating factor, but not a determinative factor, in the employer's decision, will not suffice to establish the employer's liability." *Serwatka v. Rockwell Automation, Inc.,* **591 F.3d 957, 961 (7th Cir. 2010).** Under the direct method, Plaintiff must produce direct or circumstantial evidence that she was discriminated against because of her age. *See Mach v. Will Co. Sheriff,* **580 F.3d 495, 499 (7th Cir. 2009).** Under the indirect method, an ADEA plaintiff must establish his prima facie case, which requires him to show (1) that he is over 40; (2) that he was meeting his employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees not in the protected class were treated more favorably. *Olson v. N.FS, Inc.,* **387 F.3d 632, 635 (7th Cir. 2004).**

Here is does not matter whether Plaintiff proceeds under the direct or indirect method because the only claim he raises under the ADEA has to deal with Defendant's alleged failure to accommodate Plaintiff by providing him with the use of a chair in 2008. Specifically, Plaintiff states that he suffered an adverse employment action in that "he was denied an accommodation (use of office chairs)" and points to a similarly situated employee who was outside the protected class but allowed to use a chair (Doc. 62 pp. 18-19). These allegations are in regard to his claims regarding failure to accommodation in 2008 and not his 2007 claim regarding failure to allow him to return to work. The Court has previously dismissed all of Plaintiff's claims relating to any actions taken against him in 2008 due to his failure to exhaust his administrative remedies and thus he can not raise a claim under the ADEA for these actions. Further, Plaintiff has failed to raise any claims under the ADEA for actions that occurred in 2007 or provide evidence or any similarly situated employees in support of those claims. Thus, the Court finds that Defendant is also entitled to summary judgment on Count II of Plaintiff's Amended Complaint. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment

as to Count II.

### V. <u>Conclusion</u>

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment (Doc. 59) as to both Counts I and II.  Further, the Court **DISMISSES without prejudice** Plaintiff's claims regarding the 2008 failure to accommodate for failure t o exhaust.  As Defendant is entitled to summary judgment on both Counts, the Court **CANCELS** the trial scheduled for August 22, 2011.  The Clerk to enter judgment accordingly.

IT IS SO ORDERED.

DATED: August 12, 2011.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge